Bird, Savage, and Bird *against* Pierpoint.

*Two of three partners became bankrupts in England, the other residing in this country, was declared a bankrupt under the law. of the U. S. An action of assumpsit was brought in the names of all the partners to recover a debt due before the bankruptcy. Ought not the assignees of the bankrupt-partner to have been made parties to the suit? Quere, if the assignees of the bankrupt-partner in England can sue here? The bankruptcy of the plaintiffs may be given in evidence under the general issue. Quere.*

This was an action of *assumpsit*, for goods sold and delivered. Plea, *non assumpsit.* The cause was tried before Mr. Justice *Livingston* at the *New-York* sittings, on the 14th *January*, 1805. On the trial, the plaintiffs proved their account for the goods sold, and there rested the cause. The defendant then offered to prove that the plaintiffs were joint-partners in trade in *England*, under the firm of *Bird, Savage* and *Bird*, and in this Country, under the firm of *Robert Bird & Co.* and that prior to the commencement of the present suit, *Henry M. Bird* and *Benjamin Savage*, two of the partners, were duly declared bankrupts in *Great-Britain*, where they resided, and that their property had been assigned, pursuant to the laws of that country; that *Robert Bird*, the other partner, prior to this action, was declared a bankrupt in this *State*, according to the bankrupt act of the *United States*, and that his property was duly assigned in conformity to the act. This evidence was overruled by the judge.

The defendant then offered to prove, that previous to the commencement of this action, and before the plaintiffs were severally declared bankrupts, they did, on the 3d day of *December*, 1802, make an assignment of part of their property to *R. Harrison*, Esquire, *in trust* for certain of their creditors, and the counsel for the plaintiffs, were, at the same time, called on to say, whether the present suit was prosecuted for the benefit of the said assignee, to which they declined making any reply. This evidence was also overruled, and a verdict was found for the plaintiffs.

A motion was made in behalf of the defendant to set aside the verdict for the misdirection of the judge. The case was argued at the last term by *Benson* and *Radcliff* for the plaintiffs, and *Riggs* and *Harison* (*Hoffman* on the same side) for the defendants.

The court being divided, the judges now delivered their opinions, *seriatim*.

SPENCER, J. after stating the facts. The only question which can arise in this case, is, whether the plaintiffs are proper parties to maintain the suit. As it respects the assignment to Mr. *Harison*, independently of its not being a defence at law to the defendant, it is special in its nature, and does not transfer this debt. In regard to *Henry M. Bird*, and *Savage*, their discharge in *England* cannot be taken notice of here ; the case of *Van Raugh* v. *Van Arsdaln*,* is decisive that this court will not suffer the discharge of an insolvent under the laws of a State where he is *domiciled* to operate against a creditor who resides without that State, and whose debt was contracted elsewhere. If we will not take notice of the act of insolvency, under such circumstances in favor of the insolvent, whose whole property has been divested to satisfy his creditors, surely we cannot notice the bankruptcy in *England* to defeat the recovery of a debt indisputably just. The courts of chancery† in *England* have, it is true, recognized the assignees or *curators* of a bankrupt's estate, which was assigned abroad ; but it was solely on the principle that the assignment was for a valuable consideration, and therefore, it was not that the foreign bankruptcy, as such, had any operation beyond the country where it occurred. It remains to inquire what effect the bankruptcy of *Robert Bird* has upon the question. The defendant's counsel insists that his assignees ought to be joined in the action instead of him, his legal rights having been vested in them. If this was a case of a bankrupt without partners, the objection, I incline to think, would be conclusive ; but the partners abroad, of whose bankruptcy we can take no notice, have a right to the partnership fund, to discharge the debts due from them, without the embarrassments and restraints which the uniting the names of the assignees of one of the partners might impose.

I have met with no case but that of *Echbardt* v. *Wilson*, 8 D. and E. 140, which requires the assignees of a bankrupt to be joined ; that is a very recent case and not authoritative here ; but besides this, the bankruptcy was plead in bar, and it did not operate as a surprise on the plaintiffs. I do

ALBANY,
Feb. 1806.

Bird, Savage,
& Bird
v.
Pierpoint.

* 3 *Caines*, 154.

† 1 *H. Bla.* 131, *in notis.* *Solomons* v. *Ross.* *Jollet* v. *Deponthieu.* *Neal* v. *Cottingham.*

ALBANY,
Feb. 1806.

Bird, Savage,
& Bird
v.
Pierpoint.

* 1 *Esp. Rep.*
140, 170. In
these cases the
plaintiffs were
uncertificated
bankrupts.

not, however, rest my opinion on the form of the pleading, but on the necessity, convenience, and intrinsic propriety of suffering the solvent partners to collect the debts of the firm. I lay great stress on the circumstance, that this is not a controversy between the partners in *England*, and the assignees of *Robert Bird*; but is a mere evasion and shift of an acknowledged debtor, to turn his creditors round. The cases of *Silk* v. *Osborn*, and *Evans* v. *Brown*,* proved on the principle, that however the question might be between the bankrupt and his assignees, that it did not lie in the mouth of a third person to set up this defence. In my opinion the plaintiffs are entitled to the *Postea*.

THOMPSON, J. The questions presented for the consideration of the court, are, whether, admitting the truth of what was offered to be proved there, are proper parties on the record, and if not, whether advantage can be taken of it under the plea of *non assumpsit.*

Our bankrupt law declares, that after the assignment, neither the bankrupt nor his trustees shall have power to recover or discharge any debts, which pass by the assignment ; but the assignee shall have such remedy to recover the same, in his own name, as such bankrupt might have done if no commission had issued.—It is not pretended but that the demand for which the present action is brought, originated before the bankruptcy, and passed by the assignment, and which must, under the statute, vest in the assignees, a legal right. The statue goes far towards negativing the power of the assignees to use the bankrupt's name ; in actions for demands which passed by the assignment, it says, neither the bankrupt, nor his trustees, shall have power to recover, or discharge such debts. Perhaps, however, this may be understood to mean, that they shall not have power to do this so as to *enure* to the benefit of the bankrupt. But there can be no good reason why the assignees should not prosecute in their own names.

The construction given to the English bankrupt law, which, in this respect, is analogous to ours, is that the name of the bankrupt cannot be legally used in a suit after

his bankruptcy to recover a demand which passed by the assignment. Thus in an action of *assumpsit* by several partners, the defendant pleaded in bar the bankruptcy of one of them, and the plea was held good. *(*8 *T. Rep.* 140.\*) The court said the plea shewed not merely, that there were other persons (namely, the assignees of the bankrupt partner) who ought to have sued with the plaintiff, but that one of the plaintiffs could not sue at all. This case, also shews that the assignees of a bankrupt partner may be joined in the same suit with the other partners. And it has, also, been held in the *English* courts, *(*3 *T. Rep.* 433.†*)* that the assignees of partners against whom separate commissions of bankruptcy have issued, may be joined in the same suit to recover a debt due to the bankrupts jointly. Perhaps, we ought not so far to take notice of foreign bankruptcies, as to compel prosecutions to be carried on here in the name of the assignees ; yet I think we ought to recognize the rights of the assignees, so far as to allow them to prosecute in their own names if they pleased. *(*1 *East*, 11.) But whatever may be the proper course of proceedings with respect to foreign bankruptcies, we are bound to take notice of bankruptcies happening here, and the assignees of *Robert Bird*, ought to have been joined either with his copartners or their assignees.

In the case of *Evans* & *others* v. *Mann*, *(Cowp.* 570.*)* the court laid it down as a general rule, that where the assignees bring an action, on a contract made by the bankrupt *before* his bankruptcy, they must state themselves to be assignees. There may be cases, where the assignees have been permitted to prosecute in the name of the bankrupt ; but I apprehend it has been allowed in no case, except upon contracts made by the bankrupt, after his bankruptcy, and before he obtained his certificate. When the assignees are appointed, all the estate and effects of the bankrupt are vested in them ; and he is incapable of carrying on trade, or contracting for his own benefit, until he has obtained his certificate. All the estate acquired by him, or contracts made between these two periods, are to *enure* to the benefit of

ALBANY,
Feb 1806.

Bird, Savage,
& Bird
v.
Pierpoint.

\* *Eckhardt* v.
*Wilson.*

† *Hancock* v.
*Haywood.*

\* *Smith* v. *Bu-chanan.*

Bird, Savage,
& Bird
v.
Pierpoint.

\* *Ex parte
Proudfoot.*

† *Martin* v.
*O'Hara.*

§ *Espinasse's
Cases* 140.
170.

\* *Evans* v.
*Mann.*

†*Webb* v.*Ward.*

\* *Scott* v. *God-
win.*

*Barnard* v.
*Kenworthy.*

his creditors, and are vested in his assignees, (1 *Atk.*
252.\* *Cowp.* 824.† *Bankrupt Law*, 50. Sec.) except, per-
haps, that which may be the fruits of the personal labor of
the bankrupt.§ And though the assignees might, un-
doubtedly prosecute suits in their own names, on contracts
thus made by uncertificated bankrupts, yet they may al-
so use the name of the bankrupt, because, by operation of
law, he is considered their agent. *(Cowp.* 570.\* *7 Term
Rep.*† 296.)

It remains only to inquire whether this defect of parties,
can be taken advantage of upon the trial, under the plea of
*non assumpsit.* I understand the general rule to be, that
for defect of parties plaintiffs, advantage may be taken of it
upon the trial, but the want of proper parties defendants,
must be pleaded, *(Bos.* & *Pul.*\* 73. *note.)* The reason
of the rule is obvious. Plaintiffs are presumed to know
their own rights, and all persons interested in the subject
of prosecution, and, therefore, cannot be surprised by the in-
quiry. It is not so with respect to defendants ; there may be
secret partners unknown to the plaintiffs, and if the defendants
take advantage of this, they must plead it, and thereby fur-
nish the plaintiffs with proper parties to prevent surprise.
Thus, in the case of *Graham* & *others* v. *Robertson*, 2 *T.
Rep.* 282, *Buller*, J. nonsuited the plaintiffs, because, from
the evidence, it appeared, that they had not united with
them all parties interested, which nonsuit, on a motion to
set it aside, was ruled to have been properly granted. This
rule has been too long settled to be now shaken, 2 *Stra.* 820.
*Buller N. P.* 152. And in the case of *Hopkins* v. *Dewar*,
*(Buller.* 153.) in an action of *assumpsit* for work, labor
and services, proof that the plaintiff was a bankrupt at the
time of the work and labor done, was held sufficient to non-
suit him.

I am, therefore, of opinion, that proof of the bankruptcy
of *Robert Bird*, at least, ought to have been received, and
that a new trial must be awarded, with costs to abide the
event of the suit.

LIVINGSTON, J. The first question which occurs is, whether the assignees of *Henry M. Bird*, and *Benjamin Savage* should have been parties? I have ever been disposed to take notice of assignments under the bankrupt laws of other countries, to sustain suits on them, and to consider the bankrupt discharged from all his creditors, wherever they be; but since our decision in *Van Raugh* v. *Van Arsdaln*,[*] they must be regarded as *voluntary* transfers, which cannot have the effect of enabling assignees to sue in their own names for a *chose in action*. It would be inconsistent to allow creditors residing here to sue the bankrupt in our courts, and at the same time permit the assignee to recover his property in this country. It would be holding him liable, and at the same time incapacitating him from paying. But if these assignees were not necessary parties, it is said those of *Robert Bird* were.— This presupposes a right in them to intermeddle with the collection of debts due to the firm; but no such right exists. It is well settled, that a joint estate must be first applied to payment of demands on it, and that separate creditors, of the several partners, can only claim the surplus belonging to each, after all claims on the joint fund are satisfied. It may be doubted, whether *Robert Bird's* assignees can discharge a debt due to the partnership. Why then make them plaintiffs, which might only give them a right to receive the sum in controversy, to the prejudice of the other partners, and of general creditors. If the only pretension, which *Robert Bird's* assignees have, is to call upon the house of which he was a partner, for his proportion of the joint estate, after satisfaction of their creditors, his right to sue for such estate, in conjunction with his partners, cannot be divested. It is better that joint debts, notwithstanding the bankruptcy of one partner, should be collected in the ordinary way, as if no misfortune had intervened, than to introduce considerable confusion on the record by taking notice of it. If there be precedents of declarations in this form, (for the one in *Hancock* v. *Haywood*,[*] which was cited, is not in point,) they are very rare,

ALBANY,
Feb. 1806.

Bird, Savage,
& Bird
v.
Pierpoint.

[*] 3 *Caines*, 154.

[*] 3 *T. R.* 433.

ALBANY,
Feb. 18.6.

Bud, Sa⸱ ye,
& Biid
v.
P.erpoint.

and nothing short of an adjudged case would convince me of the necessity of it. It is one thing for such declarations (although I much doubt whether any are to be found,) to pass *sub silentio*, and another to say that such a form only is good. The assignment to Mr. *Harison* was also properly rejected, not because it was fraudulent, for its object is fair and laudable, but because being *voluntary* it could not vary the mode of suing at common law, or defeat an action brought in the names of the present plaintiffs.

But if mistaken in all these points, the verdict ought not to be disturbed, because, if any of the matters relied on, were sufficient to bar, or abate the action, they ought to have been pleaded. Courts have already gone far enough in admitting special matter to be given in evidence under the general issue in matters of *assumpsit*. No one reason can be given, why a plaintiff in such suit is not entitled to be apprized of his adversary's defence, as well as in any other. In actions on promissory notes, when the pa⸱ ee is not plaintiff, it should emphatically be necessary to plead or give notice of every defence ; for, as the law is now supposed to be, innocent indorsors of su∴h paper are every day surprised by evidence of usury, or other matter, of which they cannot have any knowledge, and of course must be unprepared to meet. The inconvenience of this indulgence is so palpable, that nothing should induce us, notwithstanding the general expressions we sometimes meet with, to extend the rule, so as to embrace a single defence, not already decided on as proper under *non assumpsit*. Nor is this case within the general rule as laid down by Lord Chief Baron *Gilbert*. " On this issue," says he, " every thing may be given in " evidence which disaffirms the contract, for that goes to " the *gist* of the action, since, if there be no contract to be " performed, at the commencement of the action, there " could be no trespass for the non-performance of it, and " therefore, a release goes to the *gist* of this action, for it " shews there was no contract at the time the action was " commenced ; so every thing which shews the contract

" to be *void*, as nonage, or more money lost at play than
" the statute allows, may be given in evidence on the ge-
" neral issue, for on a *void* contract, the plaintiff has no
" right of action, therefore this and the like go to the *gist*
" of the action. Whatever goes to shew there was no con-
" tract, or that it was performed or paid, or released, or
" that there was no consideration, and discharged, goes
" to the *gist* of the action, and need not be pleaded."—
Without indulging the presumption of examining the rea-
sons assigned by this great man, for the law as laid down
by him, it is certain the present case is not embraced by
this rule, and still less by the reasons of it.

ALBANY,
Feb. 1806.

Bird, Savage,
& Bird
v.
Pierpoint.

The defence here, so far from establishing that there was
*no* contract, or that it was *performed*, or *released*, or *paid*,
or from having any thing to do with the *gist* of the action,
admitted the *assumpsit*, and that it is in full force
and unperformed, only advancing a collateral matter,
which was to have no other effect than to turn the plaintiffs
round. It is no argument to say that this matter, resting
in the plaintiffs' knowledge, they were bound to take notice
of it. The answer is, that they were not obliged to be rea-
dy to repel any defence which they were not apprized
*would be set up*. Notwithstanding the bankruptcy of all
the parties, they might, by some matter *ex post facto* their
discharge, have shewn that a right to sue revested in them,
or, as was done in *Winch* v. *Seely*, that this debt did not
pass under the commission. It is not like the case there-
fore of a person, suing when he must know either that no
cause of action *ever* existed, or that it was absolutely *done
away*, before the suit was commenced. It comports per-
fectly with the rule of Baron *Gilbert*, to say, that whatever
does not deny a *right of action*, or go to the *gist* of it, but
only alleges that the plaintiffs have parted with their right,
or that it had been *transferred* by law, to others, ought
always to be pleaded. This imposes no hardship on
defendants, and if they do not chuse to resort to special
pleading, they have no excuse since the " act for the

1 *T. R.* 619.

amendment of the law," for not subjoining to the general issue, a notice of what they intend to rely on.

There is a case, I admit, in 8 *T. R. Eckhardt* v. *Wilson*, which goes the full length of deciding, that the assignees of a bankrupt should be joined with his solvent partners, but besides that this case has no authority here, it is so contrary to the spirit of several other *English* adjudications, that it is impossible to reconcile one with the others. In *Fowler* v. *Down*,* the bankrupt was not only permitted to sue in his own name, but the whole court adopted this principle, which is too reasonable not to receive every one's assent, that if the assignees do not dispute the bankrupts right to sue, third persons, and those who have contracted with him shall not, and justice *Rooke* adopts as a mode of preventing any liability to the assignees in a subsequent action, the giving them notice of the pending suit, that they may take such measures as they may think proper. Lord *Kenyon*, in *Silk* v. *Osborn*,† says nearly the same thing, that " however the question might be between the " bankrupt and his assignees, it did not lie in the mouths " of third persons to set up the plaintiffs' bankruptcy as a " defence." In *Evans* v. *Brown*,§ his lordship not only permitted a bankrupt to maintain a suit for money lent, but says expressly, that if it did belong to the assignees, when recovered, about which there was some dispute, he would not permit the bankruptcy to be set up in bar. All these decisions appear to proceed on this principle, that the party, by his contract, is *estopped* to dispute the bankrupt's right to sue. Leaving to others to reconcile the inconsistency of the decision in 8 *T. R.* with other cases here mentioned, I shall only observe, that in that, and in most other cases where the party intended to rely on the plaintiffs' bankruptcy, it was done by pleading. The replications in *Eckhardt* v. *Wilson*, and in *Winch* v. *Sheely*, shew the propriety, nay absolute necessity of pleading this matter, or of giving notice of it with the general issue. On every ground, therefore, a new trial must be denied.

KENT, C. J. ˙ The question in this cause is, whether the suit was brought by the proper parties? and if not, then whether the defendant could avail himself of that defect upon the trial under the plea of the general issue?

The late act of bankruptcy (*Laws U. S. vol.* 5, § 13.) declared, that after the assignment the bankrupt should not have power to sue for his debts, but that the assignees should sue *in their own names*, and there is the same rule under the *English* system. (*Evans* v. *Mann, Cowp.* 570.) It was accordingly held and ruled in the case of *Eckhardt and others* v. *Wilson*, (8 *Durnf.* 140.) that to an action of *assumpsit* by several plaintiffs, it was a good plea in bar, that one of the plaintiffs had become bankrupt, and duly assigned his debts and effects, because it showed that one of the plaintiffs could not sue at all, and that there were other persons, viz. the assignees of the bankrupt partner, *who ought to have sued with the plaintiffs.* The same point was held by *Ashhurst, J.* in the case of *Graham* v. *Robertson*, (2 *Durnf.* 284.) where he observed, that if the money for which the plaintiff sued as being advanced by him was paid on a partnership account, the other partners who had become bankrupts, *or their assignees*, ought to have joined in the suit. I conclude, from the words of our statute, and these expositions of the *English* statutes, which are similar, that *Robert Bird* was improperly made a plaintiff in this suit, and that instead of him his assignees ought to have joined.

It is also a question, whether the assignees of the two *English* bankrupts ought not to have brought the suit in their own names, instead of the names of the bankrupts. It is not essential at present to determine this point, since we perceive that there is one improper person made a party; but in the case of *Smith* v. *Buchanan*, (1 *East.* 11.) Ld. *Kenyon* said that they did permit assignees of bankrupts abroad, deriving titles under foreign ordinances, to sue there for debts due to the bankrupt's estate, and that this permission was on the ground, that the right to personal property must be governed by the laws of the country

where the owner was domiciled. It is not indeed express-
ly said, though I think it is necessarily to be implied, that
such suits were permitted *in the name* of the assignee, as
that would seem to follow a recognition of his right.

It was considered upon the argument as leading to con-
fusion and difficulty, to permit assignees under separate and
distinct commissions, to unite in one suit. But so long as
the suit is for a *joint debt* due to the several bankrupts
whom the assignees represent in their *joint* capacity, I see
no objection. Assignees under separate commissions uni-
ted in the case of *Hancock* v. *Haywood*, *( 3 Durnf.* 433.*)*
and the court said, the suit was proper so far as the de-
mand was for the joint debts due to both the bankrupts.

It was also suggested at the argument, that separate part-
ners could not separately be declared bankrupts as to their
partnership concerns, but I apprehend the rule to be oth-
erwise. In the case of *Crispe* v. *Perritt*, *(Willes Rep.*
467.*)* the court of C. B. decided, after much considera-
tion, that a separate commission might be taken out against
one partner upon the petition of a joint creditor. It was
also the opinion of the court, in that case, that the words
*creditors* and *debts* in the bankrupt laws, comprehended
both separate and partnership debts, and that the certifi-
cate was a discharge, both from the partnership and sepa-
rate debts, because a partnership creditor may, if he pleas-
es, come in under a separate commission.

The next question is, whether the defendant may avail
himself at the trial of the want of proper parties?

In the case of *Graham* v. *Robertson*, above mentioned,
it was agreed that the want of proper parties, was good
ground for a nonsuit at the trial. The rule is considered
as well settled, that in an action of *assumpsit*, if all the par-
ties who ought to join are not made plaintiffs, the defend-
ant may take advantage of it on *non assumpsit*. Serjeant
*Williams*, in one of his learned notes to *Saunders*, *(1 Saund.*
291, *f. g.*) questions the good sense of the rule, while he
admits it to be established. But the present case is much
stronger than that of the want of an additional plaintiff; for

here is one at least, of the plaintiffs, prohibited from bring-
ing the suit, and where one is joined who ought not to be
joined, it was decided in the case of *Eckhardt* v. *Wilson*, to
be an objection pleadable *in bar;* and, generally, whatever
will form a good plea *in bar* may be given in evidence un-
der *non assumpsit.* I am, therefore, of opinion, that the evi-
dence of the bankruptcy of the plaintiffs, prior to the com-
mencement of the suit, ought to have been received, and
that the verdict must accordingly be set aside.

TOMPKINS, J. having been an assignee of one of the
plaintiffs, gave no opinion.

The court being thus equally divided in opinion, the
defendant took nothing by his motion.

Judgment for the plaintiffs.