## JAMES CLEADEN v. JAMES WEBB.

The maker of a promissory note in an action by an indorsee against the payee and indorser of it, is a competent witness to prove any fact in regard to it, to which any other witness would be competent to testify, provided he is not shown to be legally infamous, or is not directly interested in the result of the suit.

No special plea of usury is necessary in an action of assumpsit on a promissory note, but the same may be given in evidence under the plea of non assumpsit.

There can be no doubt or question when a promissory note is indorsed by the payee for the accommodation of the maker, and there is no other consideration for it between them, and another then discounts it for the maker at a higher rate of discount than six per cent. upon the face of it, and resorts to this method of advancing or loaning him money at a higher rate of interest than six per cent. per annum for the purpose of evading the statute against usury, that no action will lie at his suit against either the indorser or the maker, to recover the amount of it, because such a contract is a corrupt and usurious contract for the loan of money by him to the maker, and as such is prohibited by the statute.

If any usurious taint affects and vitiates an original promissory note and the same is extended to and involved in the renewal of it afterward, it will have the like effect upon the latter, and will vitiate it also.

THIS was an action of assumpsit on a promissory note for $560.33, made on the 16th of March 1872, by Lewis & Son to the order of James Webb, and by him indorsed to James Cleaden, payable thirty days after date; and the only defence was usury.

After proof of the note and notice of protest for non payment at maturity upon the defendant by the counsel for the plaintiff, James Lewis, one of the firm of Lewis & Son, the makers of it, was called as a witness by the counsel for the defendant to prove the character and usury of it.

*T. F. Bayard,* for the plaintiff, objected to his competency as a witness in the case. The note purported upon its face to be a fair and legitimate business note, and being negotiable, to have been negotiated as such. The suit is by the plaintiff as the indorsee of it, against the defendant as the payee and indorser of it and the witness called is one of the makers of it. It is not the first or the second time the question involved had arisen or been decided in this court, but on grounds somewhat different from that on which he should now rest his objection to the competency of the witness in this case ; and that is, that in this case, as one of the makers of the note, he will not only be ultimately liable to the defendant for whom he has been called as a witness for the amount of the note in case the plaintiff recovers in the action, but also for all the costs incurred by the defendant in the suit; and, therefore, he does not stand indifferently or equally liable as between the parties to it in the result, but the preponderance of his interest in the event of it, is to that extent in favor of, and on the side of the defendant. *Jones v. Brook,* 4 *Taunt.* 464. *Habley v. Brown,* 16 *Johns.* 69.  2 *Saund Pl. & Ev.* 899. *Pearce v. Butler,* 14. *Mass.* 303.  1 *Greenl. Ev. sec.* 401. But independent of that ground the witness is not competent upon the ground alone, that he is one of the makers of the note, notwithstanding it seems to have been otherwise ruled in this court in the cases of *Cook v. Pierce, Sudler v. Collins,* and *Townsend v. France,* 2 *Houst.* 499, 538, 441. And upon further consideration of the question, he flattered himself that the court would now recognize the rule in regard to it as laid down by *Ld. Mansfield* in the case of *Walton v. Shelley,* 1 *T. R.* 296, and approved and adopted by the Supreme Court of the United States in the case of *The Bank of the United States v. Dunn,* 6 *Pet.* 51, and confirmed by it in *The Bank of the Metropolis v. Jones,* 8 *Pet.* 12, and in several other cases since that time, notwithstanding the ruling by *Ld. Mansfield,* in the case of *Walton v. Shelley* had not been followed by his successor, *Ld. Kenyon* in the case of *Jordaine v. Lashbrooke,*

7 *T. R.* 601. And although the cases since ruled in England had followed the latter, it was because they had arisen since the passage of the statute in that country abolishing the incompetency and exclusion of witnesses on the ground, either of interest in the result of the suit, or from considerations of public or commercial policy. He also cited 1 *Greenl. Ev.* sec. 385 *n* 1. *Byles ·on Bills,* 348. *Churchill v. Suter,* 4 *Mass.* 156. *Thayer v. Crossman,* 1 *Metc.* 416.

*Higgins,* for the defendant. Can the question of interest in such a case be any longer considered an open question in this Court after the decision in *Cook v. Pierce,* 2 *Houst.* 499? But there had already been a release by the defendant to the makers of the note, Lewis & Son, from any and all liability in law for the costs which may be incurred by him in this or any other suit upon the note, and that would dispose of the first objection raised to the admissibility of the witness, and of the necessity of his saying any thing more in reply to it. As to the other and more general ground of objection taken to the competency of the witness, the current of authority in this country, and in most of the States of the Union, is against the rule as laid down by the great English Judge, Ld. Mansfield, in the case of *Walton v. Shelley,* whilst in those which have still adhered to it, they have only applied it to negotiable instruments when the action has been by an innocent indorsee or holder of it for value. Such has in particular, been the modification and application of it in the States of Pennsylvania and Massachusetts. But the decision of the question in the case of *Walton v. Shelley* was afterward expressly overruled in the case of *Jordaine v. Lashbrooke* for the reasons assigned by Ld. Kenyon in announcing the opinion in the latter case, that such a witness in such a case is competent, and which has since been uniformly recognized and followed both in England and in the State of New York, the two largest commercial states or communities in which the common law prevails. As to the rulings

referred to in the Supreme Court of the United States, it was a remarkable fact not to be overlooked that the very first case decided in that court on the question and cited on the other side, that of *The Bank of the United States v. Dunn*, 6 *Pet.* 51, is characterized by a singular and striking mistake in point of fact, for in the opinion delivered in it Judge McLean observes and incorrectly says that the rule stated in *Walton v. Shelley* is still the settled rule of law upon the subject in England up to the time when he was thus speaking of it in that late case : whereas we know the settled rule there has been just the reverse of it since the decision of the case of *Jordaine v. Lashbrooke*, 7 *T. R.* 601, which was as early as the year 1798 ; and all the other cases in the Supreme Court of the United States had simply followed the ruling in that case of *The Bank of the United States v. Dunn*, because the question had been primarily and originally so ruled in it, whilst in this court it has been invariably decided otherwise. As to the other States not before specially mentioned, the case of *Freeman v. Britten*, 2 *Harr.* (17 *New Jersey Rep.* 195) is a strong case and contains an able opinion of the court to the contrary of the ruling contended for on the other side. *Ringold v. Tyson*, 3 *Har. & Johns.* 172, is also a strong case to the contrary of it decided in the courts of Maryland. Also *Orr v. Lacy*, 2 *Doug. Mich. Rep.* 280. *Townsend v. Bush*, 1 *Conn.* 260. *Pecker v. Sawyer*, 24 *Verm*, 459. *Haynes v. Dewett*, 11 *New Hamp.* 180. *Taylor v. Beck*, 3 *Rand.* (*Virg.*) *Rep.* 342. *Guy v. Hill*, 3 *Murph.* (*N. C.*) *Rep.* 150. *Thayer v. Corson*, 1 *Metc.* 422.

*Bayard.* There is such a thing known to the law as an estoppel in mercantile transactions and the circulation and transfer of commercial or negotiable paper, and the wisdom of the law as well as the policy and commercial prosperity of the public, certainly forbids that any man should out of his own mouth be allowed to impeach or impugn the validity and credit of his own promissory note after he has deliberately subscribed his name to it, and seen it

negotiated and the money realized upon it in the usual course of such dealings and transactions.   2 *Smith's Ld. Ca.* 565.

*By the Court.*   The question in this case is, whether the maker of a negotiable and negotiated promissory note is a competent witness for the defendant to impeach the validity of it, in an action upon it by an indorsee against the payee and indorser of it.   At common law, and before there had been decisions in the courts of England upon the question, he would have been a competent witness in such a case for the defendant and for the purpose stated, unless he had been shown to be directly interested in the result of it.   But in this case the witness called has been released from all liability to the defendant for any costs that may be incurred by him in this suit, and, therefore, it is not necessary to notice the first ground of objection taken to his competency.   In the case of *Walton v. Shelley,* 1 *T. R.* 296, the principle was first ruled that the indorser of a promissory note was not a competent witness to prove that the consideration of it was usurious, on the ground of public policy, and because no one should be allowed to allege his own turpitude to invalidate such a security after giving it credit by signing his own name to it as a good and valid note, inasmuch as the statute then in force against usury made such a note absolutely void even in the hands of a *bona fide* purchaser without knowledge of the usury, which to the apprehension of *Ld. Mansfield* and the other judges sitting in that case, was a consequence and a consideration of sufficient weight to induce them to decide that the indorser of the note could not be admitted to give testimony to invalidate it even upon that ground.   But it seems this ruling was not approved by the bar or the bench of England at the time it was made or afterward, for in ten or twelve years from that time, it was expressly overruled in the case of *Jordaine v. Lashbrooke,* 7 *T. R.* 601, in the same court, under the sanction of a name scarcely less renowned in the judi-

cial annals of the kingdom than that of Lord Mansfield himself, Lord Kenyon, his immediate successor then presiding in it. In that case the action was upon a bill of exchange against the defendants who had accepted it, drawn to the order of another firm which had indorsed it to the plaintiff. It bore date at Hamburgh, but was in fact drawn in England without any stamp upon it, and the defence was that for that reason under the stamp act no action could be maintained upon it, and that it was therefore illegal and void. And to prove that fact a member of the firm which indorsed it was called as a witness and was objected to as incompetent for that reason, and the ruling in the case of *Walton v. Shelley* was the authority chiefly relied upon to establish his incompetency as a witness to invalidate it on the same grounds held in that case; but the court held after an an able argument of the question by counsel, that he was a competent witness to prove the fact, and to invalidate the instrument, notwithstanding he had indorsed it; and that ruling has since been uniformly followed in that country. And the rule now received there is, that any party to an instrument, whether negotiable or not, is a competent witness to prove any fact in an action upon it, to which any other witness would be competent to testify, provided he is not shown to be legally infamous, and is not directly interested in the event of the suit. And in this State we have also heretofore uniformly followed this ruling upon the question; and the courts in several of the States in this country have done the same. In others, decisions are to be found which go to the exclusion of a party to an instrument in every case, when offered as a witness to defeat it, in the hands of a third person. In others, referring the rule of exclusion to the grounds of public convenience or policy, the courts have restricted its application to the case of a negotiable security, actually negotiated and put in circulation before its maturity, and still in the hands of an innocent indorsee, without notice of the alleged original infirmity, or any other defect in the contract. And this last ruling upon the question is the

limit and extent to which the cases have gone, which have been decided in the Supreme Court of the United States, and which have been cited and referred to in the argument. And in this latter case which we have just stated, the weight of authority in this country may be considered as against the admissibility of the witness to impeach the original validity of the security; although the contrary is still holden in some courts, whose decisions in general, are received with the highest respect. 1 *Greenl. Ev. sec.* 385 and *n.* 1.

With such a contrariety of rulings on the subject in the courts of this country, and with the uniform current of decisions in England since the case of *Jordaine v. Lashbrooke,* we deem it our duty to follow the ruling heretofore made in several cases in this court upon the question which have been in accordance with those in England, until it shall have been reversed or modified by a higher court in this State. But if we were now prepared to adopt the rule on the subject which seems to have been recognized and established in the Supreme Court of the United States, and which is now said to have the weight of American authority in its favor, and which restricts the exclusion of such a witness to the case merely of a negotiable security actually negotiated and put into circulation before its maturity and still in the hands of an innocent indorsee, without notice of the alleged original infirmity, or any other defect in the contract, how could it require us to reject or exclude the witness called in this case, since the plaintiff has offered no evidence, and we have none before us as yet, that he is an innocent indorsee, or *bona fide* purchaser or holder of the note in question without any knowledge or notice of the character of it, or of the usury with which it is alleged to be tainted? It may be said in reply to this inquiry, and may also be admitted, that he is to be presumed in law to be the rightful holder of it for a valuable consideration, but at the same time it must be observed that if this ruling is adopted and applied in the present case the admission of the testimony of the witness can-

not affect him, or invalidate the note in his hands on the ground of the alleged usury without proof that he had notice of it when he received it. If, however, the plaintiff was not in fact such an indorsee, or holder of the note, then, if we understand the particular rule referred to, it would not in that case exclude the testimony of the witness. But the question whether he had notice of any thing in the making or negotiation of the note which would constitute it a usurious contract for the loan of money between any of the parties to it, had not yet arisen, or been presented directly in the case for our decision, and it is not necessary for that reason now to decide it. As to the competency of the witness at this stage of the case, and in the aspect in which it now stands before us, we have arrived at our conclusion in accordance with the former decisions of this court, and the uniform current of decisions in England, with the solitary exception before adverted to, and the decisions in several other States of the Union, upon the broad and general ground of objection taken to his admissibility and based on considerations of public convenience or public policy; and we, therefore, think that the witness should be admitted.

The witness was then sworn and stated that the note was made by the firm of Lewis & Son, which consisted of his father and himself, to the order of James Webb, the defendant, but that they did not then owe him any money, and although made payable to him or his order, he had no actual interest in it, but they had before drawn similar notes to his order which he had indorsed to enable them to raise money on them, and that he indorsed the note in question and handed it back to him, and he took it to the plaintiff who discounted it and gave him the money for it. He was then asked by the counsel for the defendant how much money he obtained from the plaintiff upon it.

*Gordon*, for the plaintiff, objected to the question because the object of it was to impeach the consideration and validity of the note on the ground of usury, under

the plea of the general issue simply, which was the only plea in the suit, aud without any special plea of usury to warrant the introduction of such testimony, which could not be done. 1 *Wheat. Sel. N. P.* 466. *Levy v. Gadsby,* 3 *Cranch* 180. *Bird v. Pierpoint,* 1 *Johns.* 118, 123.

*Higgins.* Under the rules of pleading which existed in England prior to the introduction of the present regulations on the subject, and which has always been recognized and still prevails in the Courts of this State, no special plea is necessary in an action of assumpsit, which is the form of action in this case. And usury may be given in evidence under the plea of the general issue in an action of assumpsit. 1 *Ch. Pl.* 417. 2 *Saund. Pl. & Ev.* 895. *Com. on Usury,* 5 *Law Libr.* 201. 13 *Pet.* 80.

*Bayard.* Such a defence has always been specially pleaded, even in an action of assumpsit, in the cases which have been tried in this Court; and where either the action, or the defence is given solely by a statute, the general rule of law requires that it shall be specially pleaded.

*By the Court.* Such is not the rule when the statute is a general public statute and was in force when the contract or promise was made against the validity of which it is offered in evidence under the general issue in an action of assumpsit upon it. The general rule of pleading here, and which formerly existed in England until their new regulations in actions of assumpsit is, that any matter which shows that the plaintiff never had a valid cause of action in the case, or the insufficiency or illegality of the consideration of the contract at the time when it was made, as well as most matters which show that at the time of the commencement of the suit, the plaintiff had no subsisting cause of action against the defendant, as payment, accord and satisfaction &c., may be given in evidence under the general issue. And such has been the familiar

practice in our courts. The objection is therefore over-ruled.

The witness then proceeded and testified that on the 18th day of July 1871 the plaintiff discounted a note for him drawn by his firm to the order of Samuel Kelley for $1000 at ninety days, and indoised by Kelley and also by the defendant James Webb, on which he received the sum of $892 from him, and that in the month of October following he met and borrowed of him on the street $500 for one day for which he gave him a check for $5, but neither the check, nor the $500 was paid by him, and on the 11th of November following his firm gave him their note for $560.33, which was for the $500 borrowed of him in the month of October preceding and the interest charged on the note of July 18th 1871, for $1000 and costs of protest, stamps, &c. The latter note was not paid at maturity, and twenty days afterward it was renewed by two notes given by his firm to him for $500 each, one at nine months and the other at twelve months, and on the 16th of March 1872, the note for the $560.33 given on the 11th of November 1871 not having been paid, they renewed it by giving him the note now in suit and in question, for the same amount; and which last note was given for the same purposes as that was, to secure the payment of the $500 borrowed of him on the street for a day in the month of October preceding together with the $5 they were to pay for the loan of it for five days and the interest and costs of protest and stamps charged on the $1000 note of the 18th of July 1871, as before stated. And the renewal of all the notes, were transacted between the plaintiff and themselves directly.

*Bayard*, (*Gordon* with him) for the plaintiff, contended that there was no evidence whatever before the jury that the note for $1000 first negotiated by the plaintiff on the 18th of July 1871, if it was afterward renewed by two notes for $500 each, as had been represented by the witness, had entered in any manner into the composition of

the note now in suit, or that any portion of it constituted any part of the consideration for which the latter was given ; so as to render it usurious, even, if the jury should be satisfied upon the testimony of the witness that the former was tainted with usury. For although he had stated that the interest on the former constituted a part of the consideration of the latter, blended with other matters mentioned by him, he had not stated, nor was he able to state, the amount of the interest on the $1000, which was included in the consideration for which the note now in suit was given, or what particular part of the consideration of the latter consisted of interest charged upon the former, and was added to or included in it. But every thing he had to say on that particular point was in the last degree vague, indefinite and unsatisfactory. And yet, unless the jury were satisfied by certain and positive evidence that an excess of interest amounting to more than six per cent. charged and exacted in the first transaction, entered into and constituted a part of the consideration for which the present note was given, then the latter may not, and could not be usurious. But the former note for $1000 was not paid at maturity, and twenty days afterward two notes for five hundred dollars each, the one at nine and the other at twelve months were given which was not a renewal of the former, and which had thus passed away without being renewed. So, the same was the case as to the verbal contract for the loan of the $500 on the street for one day, and which was not paid the next day. That contract too had passed away, and was not renewed by the note given for the $560.33 in the month of November following. And unless they were renewals in the strict and proper sense and meaning of those terms when applied to promissory notes, no taint however usurious affecting or pervading the former, could be communicated or extended to the latter. And as the statute against usury is a penal statute, it must be construed strictly ; and as the defence of usury had been set up by the defendant, the burden of proving it to the satisfaction of the jury rested up-

on him, for if a transaction was susceptible of two con-
structions, the one lawful and the other unlawful, the jury
was bound to give it the former construction.

*Higgins*, (*Bird* with him) for the defendant. If the note
in suit was made by Lewis & Son to the order of Webb
for their accommodation, and was transferred by them to
Cleaden, the plaintiff, for a sum which would upon the
payment of the note give him more than legal interest,
then the negotiation of the note by Lewis & Son was in
fact and in contemplation of law a contract for the loan of
money at a usurious rate of interest; and the true test in
every case was, that if no party to the note prior to the
holder of it could maintain an action upon it against the
maker, then no prior party ever owned the note, and the
holder being the first owner, must be held to have loaned
the money to the maker of it. And as accommodation
paper made for the purpose of raising money, is not avail-
able security as between the original parties to it, the pur-
chase of it amounts to a loan merely : and if the sum paid
for it gives more than legal interest to the purchaser, the
transaction is usurious, and no recovery can be had
against the parties to it. 2 *Par. on Notes & Bills*, 426, 427.
*Powell v. Waters*, 8 *Cow.* 669. *Mesun v. Commission Co.*, 15
*Johns.* 44. *Powell v. Waters*, 17 *Johns.* 176. *Williams v.
Reynolds*, 10 *Md.* 57. *Voight v. Rambo*, 1 *Phila.* 146. *Ros-
sange v. Ross*, 29 *Barb.* 576. *Clark v. Sisson*, 4 *Duer* 408.
*Catlin v. Gunter*, 1 *Kern.* 368. *Corcoran v. Powers*, 6 *Ohio*,
19. *Blodgett v. Wadhams*, *Hill & Denio*, 65. *Clark v. Loomis*,
5 *Duer*, 468. *Williams v. Storms*, 2 *Duer*, 52. *Flemming v.
Mulligan*, 2 *McCord*, 173. *Veazie Bank v. Paulk*, 40 *Maine*,
109. *Bock v. Lauman*, 24 *Penna.* 435. *Dunscomb v. Bunker*,
2 *Met.* 8. *Van Schaac v. Stafford*, 12 *Pick.* 565. *Carlisle v.
Hill*, 16 *Ala.* 398. *Saltmarsh v. Planters' Bank*, 14 *Ala.* 668.
*Simpson v. Fullenwider*, 12 *Ired.* 334. *Richardson v. Scobe*,
10 *B. Mon.* 12. *Newman v. Williams*, 29 *Missis.* 212. *Cook
v. Pierce*, 2 *Houst.* 499. And the renewal of a usurious
contract between the original parties to it, is in like man-

ner usurious. 2 *Pars. on Notes & Bills*, 420, and cases cited.

*The Court, Houston, J., charged the jury*, that it had already been decided in this court in the case of *Cook v. Pierce*, 2 *Houst.* 499, that an action will not lie against the indorser of a promissory note payable to his order and made for the accommodation of the maker, by the holder of it who discounted it with a knowledge of its character at a higher rate of discount than six per cent., for it was in effect a loan of money to the amount advanced upon it within the meaning of the statute against usury, and as such, it was unlawful under that statute, and, therefore, it could not be recovered. And there can be no doubt or question when a promissory note is indorsed by the payee for the accommodation of the maker, and there is no other consideration for it between them, and another then discounts it for the maker at a higher rate of discount than six per cent. upon the face of it, and resorts to this method of advancing or loaning him money at a higher rate of interest than six per cent. per annum, for the purpose of evading the statute against usury, that no action will lie at his suit against either the indorser, or the maker of it, to recover the amount of it, because such a contract is a corrupt and usurious contract for the loan of money by him to the maker, and as such is prohibited by the statute. And as accommodation notes of this description made for the purpose of raising money for the benefit and convenience of the makers of them, are without any value received, or actual consideration for them moving from the payees and indorsers of them, and inasmuch as for that reason no action would lie at the suit of such payees and indorsers against the makers of them, the purchase of such a note from the maker of it by another person, notwithstanding it has been indorsed by such payee of it, has been held in law to amount to a loan by the latter to such maker, and if the sum so paid for it gives a higher premium or more than legal interest to the purchaser on the sum so paid by

him for it, the transaction is usurious and illegal in its character, and no recovery can be had against either the indorser or maker of it.

There was only one question of fact in dispute between the counsel and the parties in the case, and that was whether it appeared from the evidence and the statements of the only witness who had been examined in it, and who was one of the makers of the note on which the action was brought, that any higher rate of interest, premium or discount than six per cent. had been received by the plaintiff in taking from the makers of it, Lewis & Son, the first note for $560.33 on the 11th of November 1871, or in taking the renewal of it for that amount on the 16th of March 1872, which was now the note, and the only note involved in this suit. And, of course, for that reason the inquiry of the jury must be exclusively directed and confined to it, in order to ascertain and determine whether upon all the facts stated by the witness in connection with it, from the beginning of the transactions between them and the inception of the first note spoken of by him for $1000 dated the 18th of July 1871, and the renewal or subsequent substitution of the other two notes for it for the sum of $500 each at nine and twelve months respectively, twenty days after the maturity of it, and also of the note now in suit, in the the original and verbal contract for the loan of the $500 on the street for one day made directly between them and the plaintiff, and which according to the statement of the witness, constituted the main consideration for which the first note for the same amount and renewed by this note was given, there was, or was not, included in the amount for which it was given, any usurious discount or interest, which had before been reserved by the plaintiff in the original negotiation of the $1000, or in the interest originally promised him on the loan of the $500 on the street for one day, and which the witness stated was the sum of five dollars; and in regard to both of which he had also stated that his firm had received from the plaintiff on the note for $1000 at the time it was discounted by him, the sum of only $892,

and that the consideration of the first note for $560.33 consisted of the five hundred dollars borrowed of him on the street for a day, and the balance of it of interest on the $1000 note, with the five dollars promised to be paid for the loan of the five hundred on the street for a day, and the costs of protest and stamps and some other matters of indebtedness which he could not exactly remember at this time.

We repeat these only as statements made by the witness, but at the same time we must say to you that the degree of credit to which they may be entitled, the correctness of his memory and recollection, or any bias he may feel or partiality he may entertain in favor of the defendant in this case, are all matters for your consideration and decision exclusively in making up your verdict in it. If, however, the jury should be satisfied from the evidence that the plaintiff discounted the note for $1000 of the 18th of July 1871, for the makers of it for the sum of $892, and that was all they received from him for it, and that any interest thereon charged by him at the rate of six per cent. per annum on one thousand dollars was included in, or constituted any part of the consideration for which the first note for $560.33 was given to him by them; or if the jury should be satisfied from the evidence that Lewis & Son, or either of them, borrowed the sum of five hundred dollars from the plaintiff for one day and promised to pay him five dollars for the loan of it for that time, and that the five dollars so promised was included in, or constituted any part of the consideration for which the first note for the $560.33 was given, then in either case, so far as those particular items of the consideration of it were concerned, that note was usurious and contrary to the statute, inasmuch, as they both exceeded interest at the rate of six per cent. on the actual sums so advanced and loaned to them by him, and upon which it was so respectively reserved and taken by him. And if, in addition to that, the jury is also satisfied from the evidence that the note now in suit was but a renewal of that note made on

the 11th of November 1871, or was given in substitution for it, and for the same amount, and for the same consideration, then any usury which affected the former, would have the like effect upon the latter and would vitiate it also, and the plaintiff would, therefore, not be entitled to recover upon it, but their verdict should be for the defendant. The jury, however, must be so satisfied from the evidence, otherwise their verdict should be for the plaintiff for the amount of the note with six per cent. interest upon it from the time of its maturity.

The defendant had a verdict.